IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SUSAN SLATER, Individually, and as Surviving Spouse of DAVID C. SLATER, and as Beneficiary of DAVID C. SLATER § § § § *Plaintiff*, § § v. § § SOUTHWEST RESEARCH INSTITUTE, et al., § § *Defendants*. | Civil Action No.  SA-12-CV-1205-XR |

## ORDER

On this date, the Court considered Defendants' motion for summary judgment. Doc. No. 38. After careful consideration, the Court GRANTS the motion.

## BACKGROUND

This case arises out of the late Dr. David Slater's employment relationship with Defendant Southwest Research Institute ("SWR"). Dr. Slater began his career as a staff scientist at SWR in 1994 and had a distinguished career in the Space Science and Engineering Division. In 2007, Dr. Slater was diagnosed with brain cancer. He underwent an operation and was treated with chemotherapy and radiation. After a recovery period, Dr. Slater returned to work at SWR with no restrictions. One year later, during the summer of 2008, Dr. Slater suffered a setback in his recovery and was required to miss work for treatment. As a result of this treatment, Dr. Slater suffered short-term memory loss. When he returned to work in the fall of 2008, Dr. Slater's treating oncologist recommended that he not take on any new projects and

1

work only on existing projects due to his memory loss.  SWR accepted these restrictions and permitted Dr. Slater to return to work.

On November 20, 2008, Dr. Slater participated in SWR's yearly open enrollment for their employee benefit plan.  At this time, Dr. Slater decreased his life insurance benefit from $500,000 to $100,000.

Approximately one year later, during the 2009 open enrollment period, Dr. Slater's wife, Plaintiff Susan Slater, accompanied him to the SWR benefits office.  The purpose of their visit was to add an insurance plan for legal services to offset the future cost of planning Dr. Slater's estate.  Upon reviewing Dr. Slater's benefits with the SWR staff, Mrs. Slater discovered that her husband's life insurance benefit had been decreased.  She alleges that Dr. Slater had no memory of making this change and was "visibly upset" to learn that his life insurance benefits had been decreased. Doc. No. 39, Ex. 3.

At this time, Dr. and Mrs. Slater asked SWR to correct Dr. Slater's mistake and restore his life insurance benefit to its original $500,000 level.   Mrs. Slater testified that they were told that SWR could do nothing about the change, and that they would need to deal directly with the insurance company, Sun Life.  Sun Life required Dr. Slater to submit evidence of insurability, as was required under his policy, and ultimately refused to reinstate the $500,000 benefit.

On July 7, 2010, SWR changed insurance carriers from Sun Life to Hartford.  SWR communicated this information to Mrs. Slater on October 22, 2010, and advised Mrs. Slater that her only recourse was a claim under the Employee Retirement Income Security Act ("ERISA"), or a claim with the Texas Department of Insurance.  Dr. Slater passed away on May 30, 2011.

On November 19, 2012, Mrs. Slater filed a state court petition against Defendants SWR and Southwest Research Medical Trust Plan ("SWR Plan") alleging common law fraud based on the improper administration of SWR's benefits plan.  On December 21, 2012, Defendants removed on the grounds that Plaintiff's claim was entirely preempted by ERISA, 29 U.S.C. §§ 1001, et. seq., Doc. No. 1.  On January 22, 2013, Plaintiff filed a motion to remand.  Doc. No. 7.  The Court denied the motion, holding that Plaintiff's state-law claim was completely preempted by ERISA § 502(a).  Doc. No. 18.  On June 26, 2013, Mrs. Slater filed an amended complaint alleging that Defendants violated ERISA by breaching their fiduciary duties to her husband. Doc. No. 28.  On November 22, 2013, Defendants filed this motion for summary judgment. Doc. No. 38.

## LEGAL STANDARD

Summary judgment is proper when the evidence shows "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-252 (1986). Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails . . . to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Curtis v. Anthony*, 710 F.3d 587, 594 (5th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

The court must draw reasonable inferences and construe evidence in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Although the evidence is viewed in the light most favorable to the nonmoving party, a nonmovant may not rely on "conclusory allegations, unsubstantiated assertions, or only a

scintilla of evidence" to create a genuine issue of material fact sufficient to survive summary judgment. *Freeman v. Tex. Dep't of Criminal Justice*, 369 F.3d 854, 860 (5th Cir. 2004).

## DISCUSSION

As part of a complex regulatory scheme, ERISA imposes fiduciary duties on administrators of employee benefit plans. 29 U.S.C. § 1104(a)(1). In particular, the statute provides a private cause of action against those individuals or entities that breach their fiduciary duties. 29 U.S.C. § 1132(a)(3). Plaintiff asserts that as "a matter of law, being a plan administrator and sponsor make [SWR] a fiduciary." Doc. No. 39 at 7. To the contrary, the Supreme Court has held that an employer's status as a plan administrator does not automatically make the employer an ERISA fiduciary. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000); *Hozier v. Midwest Fasteners, Inc.*, 908 F.3d 1115, 1158 (3rd Cir. 1990) (fiduciary duties apply not "just to particular persons, but particular persons performing particular functions.").

Under ERISA, an employer is a fiduciary only with respect to those aspects of its benefits program over which it exercises discretionary functions. *Id.* (discussing 29 U.S.C. § 1002(21)(A)); *see also Coleman v. Nationwide Ins. Co*. 969 F. 2d 54, 61 (4th Cir. 1992) (status of plan administrator as fiduciary is not "all or nothing" concept; employer is fiduciary "to the extent" it performs discretionary functions with respect to a plan.). Thus, an employer that offers a benefits plan does not automatically become a fiduciary in all respects and instead only acquires fiduciary duties when it exercises discretionary functions related to its benefits plan. Accordingly, the Court must assess whether a fiduciary duty exists at each instance that Plaintiff alleges a breach of said duty.

In addition to establishing the existence of a fiduciary duty, a plaintiff must prove that the defendant breached that duty. *Varity Corp. v. Howe*, 516 U.S. 489 (1996). ERISA § 404(a) provides that "a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants," and "for the exclusive purpose of providing benefits to participants." 29 U.S.C. § 1104(a)(1)(A). Such duties shall be discharged "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). In addition to these statutory provisions, courts are permitted to rely on the common law of trusts to define the general scope of a fiduciary's responsibilities. *Kujanek v. Houston Poly Bag I, Ltd.*, 658 F.3d 483, 487 (5th Cir. 2011).

In her Amended Complaint, Plaintiff alleges that Defendants breached their fiduciary duties when they: (1) failed to oversee Dr. Slater's benefit election during 2008 open enrollment, (2) failed to abide by Dr. Slater's work restrictions; and (3) changed providers from Sun Life to Hartford during the pendency of the Slaters' appeal. The Court will address each of these claims in turn.

   *1.  2008 Benefit Enrollment*

Mrs. Slater's primary contention is that Defendants breached a fiduciary duty when they permitted Dr. Slater to make changes to his life insurance policy during the 2008 open enrollment period. Specifically, Mrs. Slater argues that the breach occurred when Defendants allowed Dr. Slater to "access and change his life insurance benefits without supervision and review." Am. Compl. ¶ 6.5.

As an initial matter, SWR was not acting as a fiduciary when it provided its employees, including Dr. Slater, with an open enrollment period. ERISA implementing regulations state that "a person who performs purely ministerial functions . . . for an employee benefit plan within a framework of policies, interpretations, rules, practices and procedure made by other persons is not a fiduciary." 29 C.F.R. § 2509.75-8. By providing a yearly open enrollment period, SWR was performing a purely ministerial function. During open enrollment, SWR employees are free to make changes to their benefit plans using an online portal. The undisputed record indicates that any change made to a benefit plan by an employee during this period becomes effective *automatically* on January 1 of the following year. Doc. No. 38, Ex. C. (emphasis added). Since an employee's election occurs automatically, Defendants do not exercise any discretionary authority over what occurs during open enrollment.

"ERISA raises an employer to the status of fiduciary to the extent that it 'exercises any discretionary authority or discretionary control respecting management' of the plan, or has 'any discretionary authority or discretionary responsibility in the administration' of the plan." *Martinez v. Schlumberger, Ltd.*, 338 F.3d 407, 414 (5th Cir. 2003) (quoting *Varity Corp. v. Howe*, 516 U.S. 489 (1996)). With respect to the act of providing an open enrollment period, Plaintiff has put forth no evidence indicating that Defendants possessed any discretionary authority to alter or amend the elections made by its employees within the range of options provided to them by their plan. Instead, to the extent that Defendants provide the technological platform for employees to transmit their benefit elections to the providers, they are acting solely in a ministerial capacity. Consequently, Defendants were not acting in a fiduciary capacity when

they provided employees with open enrollment seasons and were not subject to ERISA fiduciary duties with respect to this particular aspect of plan administration.

Notably, even if the Court assumes that a fiduciary duty existed with respect to open enrollment, Defendants did not breach any such duty by failing to oversee Dr. Slater's elections. The ERISA fiduciary duty of loyalty requires that a plan administrator act "solely in the interest of the participants." 29 U.S.C. § 1104(a)(1)(A).  It does not require the plan administrator to ensure that a plan participant acts in his or her own best interest.  Such an expansive understanding of the duty of loyalty would place employers in the unreasonable position of having to oversee and second-guess the benefit elections made by their employees.  Moreover, Defendants provided employees with clear instructions on how to navigate the open enrollment software, and provided benefits staff to answer any substantive questions.  No case law suggests that the duty of loyalty requires the employer to oversee specific elections to ensure that they are actually in the best interest of the employee.

### 2. *Failure to follow Dr. Slater's work restrictions*

The Amended Complaint could also be construed as alleging that Defendants breached a fiduciary duty by failing to abide by the alleged representation that Dr. Slater would be "closely supervised" when he returned to work.  Am. Compl. ¶ 6.9.  Dr. Slater took medical leave during the Summer and Fall of 2008.  When he returned to work, his physician indicated that he could do so with "minimal accommodation," but suggested that he not be assigned to new projects. Doc. No. 38, Ex. R.  Dr. Burch, Dr. Slater's supervisor, approved these restrictions.  Doc. No. 38, Ex. T.  Nothing in the physician's restrictions indicated that SWR needed to "closely supervise," Dr. Slater as Plaintiff alleges.

More importantly, even assuming that SWR made such a representation, it did so solely in its capacity as an employer and not as an ERISA fiduciary. The Supreme Court is clear that employers who offer benefit plans are not subject to ERISA fiduciary duties with respect to the entire employer-employee relationship. *Varity*, 516 U.S. at 498. When SWR decided to allow Dr. Slater to return to work it was acting as his employer. Accordingly, Plaintiff cannot rely on this theory of liability to obtain relief under ERISA.

   *3. Changing Providers from Sun Life to Hartford*

Finally, Mrs. Slater alleges that Defendants breached a fiduciary duty when they changed insurance providers from Sun Life to Hartford during the pendency of the Slaters' appeal to Sun Life. When Defendants made this decision to switch insurance carriers, they were not acting as fiduciaries. The Supreme Court has held that in ERISA cases, "an employer may decide to amend an employee benefit plan without being subject to fiduciary review." *Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996); *McGath v. Auto-Body N. Shore*, 7 F.3d 665, 670 (7th Cir. 1993) ("[E]mployer does not act as fiduciary when it amends or otherwise sets the term of a plan."). Here, the act of changing insurance carriers constituted an "amendment" to the terms of the benefits plan available to SWR employees. Thus, case law indicates that when Defendants made the decision to switch to Hartford, they were not acting as fiduciaries.

Even assuming that a duty existed in this context, there is no merit in the argument that Defendants breached such a duty by changing insurance carriers. As noted above, the duty of loyalty requires a plan administrator to act for the benefit of plan participants. *Kujanek*, 658 F.3d at 487 (discussing ERISA duty of loyalty). There was no breach here because Plaintiff benefited from the switch. Hartford, unlike Sun Life, allowed Dr. Slater to raise his life

insurance benefit from $100,000 to $200,000.  Doc. No. 38, Ex. DD.   This increase would not have occurred had Defendants remained with Sun Life.  Accordingly, the switch in carriers benefited the Slaters.

Plaintiff alleges in a conclusory fashion that the change in insurance carriers was made "in order to prevent the appeals process from correcting the error." Am. Compl. ¶ 6.17.   Plaintiff implies that when Defendants switched to Hartford they lost any leverage they may have had with Sun Life to help with the appeal.  This argument requires the Court to assume that: (1) Defendants wanted to interfere with the Slaters' appeal; and (2) that this animus motivated Defendants to switch insurance providers.  Neither is a reasonable inference to draw from Defendants' act of switching providers.  First, there is no evidence that Defendants wanted to negatively influence Plaintiff's appeal with Sun Life.  Such an inference is unreasonable given the fact that the Slaters had already completed one appeal before Defendants switched carriers.

Second, although the Court resolves all inferences in favor of Plaintiff as the non-movant, it is not reasonable to assume that a large employer switched insurance carriers for the purpose of harming Plaintiff's interests.  To the contrary, the only documentary evidence on this point suggests that Defendants switched to Hartford in order to offer employees lower premiums. Doc. No. 39, Ex. 20.   Defendants did not breach a fiduciary duty owed to Plaintiff by switching life insurance carriers from Sun Life to Hartford.

## CONCLUSION[1]

In light of the foregoing analysis, Defendants' motion for summary judgment is GRANTED. Doc. No. 38.  The Clerk is directed to CLOSE this case and issue a judgment that Plaintiff takes nothing on her claims, which are hereby DISMISSED ON THE MERITS. Defendants are awarded costs of court and shall file a Bill of Costs in accordance with the local rules.

SIGNED this 23rd day of December, 2013.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[1] In response to Defendants' motion for summary judgment, Plaintiff advances a new argument that a breach of fiduciary duties occurred when the Slaters interacted with SWR benefits staff in 2009 and 2010.  Doc. No. 39.  "A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court." *Cutrera v. Bd. of Sup'rs of Louisiana State Univ.*, 429 F.3d 108, 113 (5th Cir. 2005); *Fisher v. Metropolitan Life Ins. Co.*, 895 F.2d 1073, 1078 (5th Cir.1990).